UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY ALFARO

      Plaintiff,

                                          Civil No. 04-72664
                                          Hon. John Feikens

      v.

DANA CONTAINER, INC., a New
Jersey Corporation,

      Defendant.

_____/

**OPINION AND ORDER**

Plaintiff's cause of action against his former employer, Dana Container, Inc. ("Dana") arises out of Dana's termination of Plaintiff's employment. Plaintiff alleges that Defendant inappropriately terminated Plaintiff for reasons related to Plaintiff's race. Specifically, Plaintiff alleges two claims under Michigan's Elliot-Larsen Civil Rights Act (M.C.L.A. § 37.2101).[1] This Court has jurisdiction over this civil action under 28 U.S.C. § 1332, diversity jurisdiction. For the reasons below, I GRANT Defendant's motion for summary judgment, pursuant to Fed. R. Civ. P. 56.

**I.  FACTUAL BACKGROUND**

Plaintiff, Timothy Alfaro, is a Hispanic male formerly employed by Defendant Dana

---

[1] Plaintiff, in his Complaint, numbers his recitation of facts as "Count I" with the result being that his Complaint states three counts. However, because Plaintiff does not state a claim under his "Count I" section, rather he only recites facts, Plaintiff only states two causes of action.

Container, Inc. ("Dana"). (Pl.'s Resp. at 2.) On August 31, 2002, Alfaro began his employment at Dana. (Def.'s Br. at Ex. F (Alfaro's Dep.) at 23.) Both Plaintiff and Defendant agree that initially Alfaro and his supervisor, Demetrius Hayes, were good friends.[2] (Def.'s Br. at 4; Pl.'s Resp. at 2.)

Between October 22, 2002, and August 27, 2003, Alfaro's supervisors submitted eight employee disciplinary reports criticizing Alfaro's work performance for various reasons. Alfaro's supervisors consistently stated that Alfaro was careless, "insubordinate[,]" "failed to follow instructions" and even destroyed company property. (Def.'s Br. at Ex. A (Disciplinary Reports) at 1-8.) On many of these reports, Alfaro acknowledged that he knew his supervisors were not satisfied with his work and were therefore submitting these reports. Id. at Ex. A at 2-5.

On August 29, 2003, Alfaro does not dispute that he brought a baseball bat to work when he came to pick up his paycheck. (Pl.'s Resp. at 3.) Alfaro admits that he then threatened Hayes with the baseball bat. Id. at 3. Alfaro alleges that he threatened Hayes because Hayes stated that Alfaro would not be receiving his check because Alfaro owed Hayes money. (Def.'s Br. at Ex. F (Alfaro's Dep.) at 42-3.) That same day Hayes submitted another disciplinary report stating that "Alfaro brought a bat to work on 8/29/03 threden [sic] me to give him his check." Id. at A. at 9.) The Regional Operations Manager, Michael McCaughn,[3] sent Alfaro a letter stating that:

> [I]n the year of 2003 there have been eight Disciplinary Reports sent to me for my review by your Supervisors [sic]. After being reviewed by you, myself and your

---

[2] Hayes and Alfaro socialized together outside of work. (Def.'s Br. at 4; Pl.'s Resp. at 2.) Hayes often loaned money to Alfaro, Hayes took Alfaro to the doctor's office, and Hayes assisted Plaintiff after Plaintiff was mugged. (Def.'s Br. at 4; Ex. F (Alfaro's Dep.) at 34. )

[3] Defendant also claims that McCaughn, now deceased, was also Hispanic. (Def.'s Br. at 6; citing Ex. G (Hayes' Dep.) at 47-8.)

> Supervisors it is apparent these reports are indeed valid as well as the Information in them [sic]. The latest report dated 08-29-03 you took a baseball bat from your Automobile and threatened my Supervisor Demetrius Hayes with bodily harm. [sic] [...]. You will be suspended without pay and may return to work 09/15/03.[4]

(Def.'s Br. at Ex. B (Manager's Letter) at 1.)

Around September 4, 2003, Alfaro claims that McCaughn and Hayes began to say racial slurs to him.[5] (Pl.'s Resp. Ex. 6 (Alfaro's Dep.) at 50.) Plaintiff claims that McCaughn told Plaintiff to come to McCaughn's office and then McCaughn said to Plaintiff that he is "nothing but a f-ing spic and wetback." Id. at Ex. 6 at 50. Plaintiff claims that later that same day he and Hayes were in the locker room when Hayes "started saying the same thing[.]" Id. at Ex. 6 at 50.

On September 10, 2003, Alfaro filed a complaint for "National Origin Discrimination" with the Michigan Department of Civil Rights / Equal Employment Opportunity Commission ("MDCR/EEOC") against Defendant. Id. at Ex. E (Charge of Discrimination) at 1. Plaintiff claims that after filing the complaint Hayes and McCaughn "constantly" harassed Alfaro in retaliation for submitting the complaint. (Pl.'s Resp. at 5-6.)

On September 18, 2003, Hayes wrote another disciplinary report stating that Alfaro failed to "follow instructions[,]" exhibited "[c]arelessness" and his actions had resulted in the "[d]estruction of Company property."[6] Id. at Ex. C (Report 09/18/03) at 1. On September 23,

---

[4] Surprisingly, Plaintiff states, "But it must be noted that his job was secure after the baseball bat incident." (Pl.'s Resp. at 5.)

[5] Although McCaughn suspended Alfaro until September 15, 2003, it appears that Dana permitted Alfaro to return to work on September 4, 2003. Neither party explains the discrepancy between Alfaro's actual term of suspension and McCaughn's note.

[6] Hayes wrote that:

3

2003, Alfaro failed to clean a trailer and his employer discharged him.[7] Id. at Ex. D (Report 09/23/03) at 1. On October 10, 2003, Alfaro filed another complaint with the MDCR/EEOC alleging that Defendant, now his former employer, discharged Alfaro "unlawfully in retaliation for filing the civil rights complaint." Id. at Ex. E (Charge of Discrimination) at 1.

In mid-October of 2003, after Defendant fired Alfaro, Defendant claims that it received its first notice that Plaintiff had filed a Charge of Discrimination with the Michigan Department of Civil Rights. (Def.'s Br. at 7; Ex. G (Hayes' Dep.) at 46; Ex. H (Coley's Dep.) at 24, 26.)

## II. ANALYSIS

### A. Motion for Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only if it might affect the outcome of the case under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court must view the evidence and any inferences drawn from the evidence in a light most favorable to the

---

> Tim was told when the new gates were put down in bays 3 & 4 not to run over them with a hilo. I asked him why did he run over them [sic] he said f[—] this cheap s[—]. He wanted to do it his way and now its all bent [sic] 6 grates were damaged in bay (3) so I told him to go home for the day.

(Def.'s Br. at Ex. C at 1.)

[7] Coley, Alfaro's supervisor, clarified that Alfaro brought the trailer "back with some kind of brown substance in it." Id. at Ex. D (Report 09/23/03) at 1. Coley wrote in his report that at the time that Alfaro failed to clean the trailer Alfaro was already "on probation for this same thing." Id. at Ex. D at 1.
I also note that there is some discrepancy over whether Alfaro was discharged on September 23, 2003, or September 26, 2003. See Id. at Ex. E (Charge of Discrimination) at 1.

nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted), Redding v. St. Edward, 241 F.3d 530, 532 (6th Cir. 2001).

The burden on the moving party is satisfied where there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). For a claim to survive a motion for summary judgment, the respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has some discretion to determine whether the respondent's claim is plausible. Betkerur v. Aultman Hosp. Ass'n, 78 F.3d 1079, 1087 (6th Cir. 1996). See also, Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989).

**B. Elliot-Larsen Civil Rights Act Claims**

Alfaro claims that Defendant discharged Plaintiff on the basis of his race and his national origin. (Pl.'s Compl. ¶¶ 9-14.) Under M.C.L.A. § 37.2202(1)(a) an employer is not permitted to discharge an individual with respect to employment because of that person's race or national origin. Plaintiff also alleges that Defendant terminated Plaintiff to retaliate against Plaintiff's filing a complaint with the MDCR/EEOC.[8] (Pl.'s Compl. ¶¶ 15-20; M.C.L.A. § 37.2701.)

A plaintiff bringing a claim under Elliot-Larsen must meet the same evidentiary burden as imposed under the Civil Rights Act of 1964 at 42 U.S.C. § 2000(e) et. seq. ("Title VII"). Weberg v. Franks, 229 F.3d 514, 522 (6th Cir. 2000). Plaintiff, however, fails to meet the

---

[8] Plaintiff's Complaint actually states that Plaintiff is bringing his retaliation claim under M.C.L.A. § 37.2202. (Pl.'s Compl. ¶¶ 15-20.) However, I believe Plaintiff mistakenly labeled this section in his Complaint and I address Plaintiff's claims as if they were brought under the correct statute governing retaliation M.C.L.A. § 37.2701.

burden of stating a prima facie case of unlawful discrimination or retaliation. Therefore, I GRANT Defendant's motion for summary judgment with respect to these claims.

### 1. M.C.L.A. § 37.2202 (Discharge based on Race and National Origin)

A plaintiff, to establish a Title VII discrimination claim, must either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Johnson v. Kroger Co., 319 F.3d 858, 864-865 (6th Cir. 2003).

Direct evidence is the type of evidence that, if believed, "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."[9] Kroger Co., 319 F.3d at 865; citing Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999). Furthermore, "direct evidence does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group."[10] Kroger Co., 319 F.3d at 864; citing Nguyen v. City of Cleveland, 299 F.3d 559, 563 (6th Cir. 2000); see also Talley v. Bravo Pitino Rest., 61 F.3d 1241, 1248 (6th Cir. 1995). Once a plaintiff shows that discrimination played a

---

[9] The Sixth Circuit Court of Appeals explaining a plaintiff's burden uses the terms "motivation" and "intent" synonymously. Compare Kroger Co., 319 F.3d at 865, and Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000).

[10] A concise summary of cases demonstrating statements that constituted direct evidence of discrimination is found in Kresnak v. City of Muskegon Heights, 956 F.Supp. 1327, 1335 (W.D. Mich. 1997). See LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 380 (6th Cir. 1993)(direct evidence based on negative statements regarding older workers repeatedly made by members of a decision maker's union caucus and the decision maker); Talley v. Bravo Pitino Rest., 61 F.3d 1241, 1248 (6th Cir. 1995)(evidence of racial slurs by a manager was direct evidence); Terbovitz v. Fiscal Court, 825 F.2d 111, 115 n.3 (6th Cir. 1987)(direct evidence existed where statements were made to an applicant that a county would not hire a female for a position coupled with the employer losing the applicant's application).

motivating part in an employment decision a defendant must prove that it would have made the same decision even without the taint of discrimination. Price Waterhouse v. Hopkins, 490 U.S. 228, 244-6 (1988).

However, the Sixth Circuit Court of Appeals held:

Of course, if the district court does not believe the plaintiff's proffered direct evidence, then the evidentiary framework of McDonnell Douglas is the proper mode of analysis. See Blalock v. Metals Trades, Inc., 775 F.2d 703, 707-08 (6th Cir. 1985). Thus, as we said in Blalock: "'When direct evidence of discrimination has been introduced, the lower court must, as an initial matter, specifically state whether or not it believes plaintiff's proffered direct evidence of discrimination.'" Id. at 708 (quoting Thompkins v. Morris Brown College, 752 F.2d 558, 564 (11th Cir. 1985)).

Terbovitz v. Fiscal Court, 825 F.2d 111, 115 n.3 (6th Cir. 1987).

A plaintiff who presents circumstantial evidence must establish a prima facie case of discrimination. Johnson v. Univ. of Cincinnati, 215 F.3d 561, 572 (6th Cir. 2000). Plaintiff, to establish a prima facie case, must be shown to have been "(1) a member of a protected class, (2) subject to an adverse employment action, [and], (3) qualified for the position, and that (4) others similarly situated and outside the protected class, were unaffected by the employer's adverse conduct." Lytle v. Malady, 458 Mich. 153, 181 (Mich. 1998); citing Town v. Michigan Bell Tel. 455 Mich. 688, 695 (Mich. 1997).

The Sixth Circuit Court of Appeals held that a plaintiff seeking to prove disparate treatment through circumstantial evidence does not always have to present evidence establishing the last prong of the prima facie case. Talley, 61 F.3d at 1247. However, a plaintiff who does not demonstrate the fourth prong of the prima facie case, must alternatively show other additional evidence that tends to establish the inference of discrimination. Id. at 1247. A plaintiff can point to "other individuals who were more favorably treated[,]" to show an

7

inference of discrimination.  Id. at 1247.

If a plaintiff establishes a prima facie case he creates a rebuttable presumption of discrimination.  Kroger Co., 319 F.3d at 866; citing Univ. of Cincinnati, 215 F.3d at 572.  Then the defendant must show a "legitimate, nondiscriminatory reason" for committing the challenged action.  Id. at 866 citing Univ. of Cincinnati, 215 F.3d at 573.  If the defendant satisfies this burden the plaintiff then must prove that the defendant's reason is actually a pretext to cover up unlawful discrimination.  Id. at 866 citing Univ. of Cincinnati, 215 F.3d at 573.

### a. Direct Evidence of Discrimination

Plaintiff's showing of direct evidence of discrimination is unconvincing and therefore, Plaintiff is unable to proceed under the direct evidence prong.  Plaintiff presents his own testimony to show that his supervisors subjected him to racial slurs while in the course of his employment.  Plaintiff testified that McCaughn said to Plaintiff that Plaintiff is "nothing but a f-ing spic and wetback."  (Pl.'s Resp. Ex. 6 (Alfaro's Dep.) at 50.)  Furthermore, Plaintiff stated that his supervisor Hayes "started saying the same thing[.]"  Id. at Ex. 6 at 50.  Alfaro's testimony is self-serving and unsupported by any other witnesses or other evidence despite Alfaro's assertion that the his supervisors "constantly" harassed him.  (Pl.'s Resp. at Ex. 9 (Alfaro's Dep.) at 60.)

Furthermore, Defendant provides contradictory testimony that is equally plausible as Alfaro's testimony.  Hayes testified that he never called Alfaro a "spic" or a "wetback," and he never heard McCaughn refer to Alfaro with those terms.  (Def.'s Br. at Ex. G (Hayes' Aff.) at 44-5.)  Furthermore, Hayes stated that basically he avoided any contact with Alfaro after the August 3, 2003, incident.  Id. at Ex. G at 44.  McCaughn, who Defendant claims was Hispanic, is

dead and unable to comment about his alleged comments. (Def.'s Br. at 6; citing Ex. G (Hayes' Dep.) at 47-8.)

Plaintiff's allegation is unsupported with evidence other than his own testimony and Defendant offers Hayes' testimony to contradict Alfaro's assertion. Therefore, I hold that Plaintiff did not demonstrate direct evidence of discrimination. Accordingly, I analyze Plaintiff's claim under the circumstantial evidence prong to determine if Plaintiff can establish a discrimination claim.

b. Circumstantial Evidence of Discrimination

Plaintiff is unable to establish a prima facie case through the use of circumstantial evidence. Plaintiff can neither prove the prima facie case's fourth prong, nor show an inference of discrimination by pointing to other individuals who Defendant treated more favorably than Plaintiff.

The fourth prong requires Plaintiff to show that "others similarly situated outside the protected class, were unaffected by the employer's adverse conduct." Lytle, 458 Mich. at 181. The Sixth Circuit stated that to be "similarly situated" a plaintiff must show that "all of the relevant aspects of his employment situation are 'nearly identical' to those of the [other] employees who he alleges were treated more favorably." Pierce v. Commw. Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994); citing Ruth v. Children's Med. Ctr., 940 F.2d 662 (Table), 1991 WL 151158, at *6 (6th Cir. Aug. 8, 1991)(quoting Payne v. Illinois Cent. Gulf R.R., 665 F.Supp. 1308, 1333 (W.D. Tenn. 1987)). As stated above, Plaintiff could alternatively demonstrate that "other individuals who were more favorably treated[,]" to show an inference of discrimination. Talley, 61 F.3d at 1247.

However, Plaintiff does not sufficiently make either showing to establish the prima facie case's fourth prong. Plaintiff vaguely states "similarly situated people other than Alfaro were treated differently and not subjected to racial slurs and comments." (Pl.'s Resp. at 10.) This statement is vague because Plaintiff does not name these "similarly situated people." Furthermore, Plaintiff's comment is conclusory. Plaintiff assumes without explaining that these other employees are similarly situated to Plaintiff.

Furthermore, Plaintiff's analysis is confused. The prima facie case's fourth prong requires that Plaintiff show that "others similarly situated outside the protected class, were unaffected by the employer's adverse conduct." Lytle, 458 Mich. at 181. Plaintiff claims that Dana's termination of Plaintiff's employment is the adverse employment action that satisfies the prima facie case's third prong. (Pl.'s Resp. at 10.) However, when identifying the fourth prong Plaintiff identifies "racial slurs and comments" as the "adverse employment action."[11] Lastly, if Alfaro identifies his supervisors' "racial slurs and comments" as the "adverse employment action" his claim fails because "racial slurs and comments" are not employment actions. See e.g. Deflaviis v. Lord & Taylor, Inc., 223 Mich. App. 432, 441 (Mich. App. 1997); see also Barrett v. Kirtland Comty. Coll., 245 Mich. App. 306, 315 (Mich. App. 2001).

Plaintiff cannot demonstrate the prima facie case's fourth prong, therefore, Plaintiff is unable to demonstrate a claim of discrimination through the use of circumstantial evidence. Thus, I GRANT Defendant's motion with respect to Plaintiff's Elliott-Larsen discrimination

---

[11] Alfaro's swap of the identified adverse employment is inappropriate because his argument amounts to making the illogical argument that Dana, by firing Alfaro, discriminated against Alfaro based on his race but a similarly situated employee would not be called racial slurs.

claim.

### 2. M.C.L.A. § 37.2701 (Discharge based on Retaliation)

Plaintiff alleges a violation of the Elliot-Larsen Civil Rights Act, pursuant to M.C.L.A. § 37.2701, regarding retaliation. (Pl.'s Compl. ¶¶ 15-20.) This section states that "[A] person shall not: Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, [or] filed a complaint...under this act" M.C.L.A. § 37.2701.

The elements of a prima facie case of retaliation include: "(1) that [the plaintiff] engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." Deflaviis, 223 Mich. App. at 435; Johnson v. U.S. Dept. of Health and Human Serv., 30 F.3d 45, 47 (6th Cir. 1994). To establish the causation element Plaintiff must show that his participation in a protected activity was a "significant factor," contributing to his employer's adverse employment action. Polk v. Yellow Freight System, Inc., 801 F.2d 190, 199 (6th Cir. 1986).

If a plaintiff establishes a prima facie case of retaliatory discharge, "the burden of production of evidence shifts to the employer to 'articulate some legitimate non-discriminatory reason' for its actions." Canitia v. Yellow Freight Sys., Inc., 903 F.2d 1064, 1066 (6th Cir. 1990), cert denied, 498 U.S. 984 (1990); citing McDonnell Douglas Corp., 411 U.S. at 802. If a defendant employer can meet this burden then the plaintiff must "demonstrate 'that the proffered reason was not the true reason for the employment decision." Canitia, 903 F.2d at 1066; quoting Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981).

In this case, Plaintiff alleges that Defendant fired Plaintiff, in retaliation for filing a complaint against her employer because his supervisors allegedly said racial slurs to Plaintiff. (Pl. Compl. ¶¶ 15-20). Although Plaintiff shows the prima facie case's first and third prong, his retaliation claim fails because Plaintiff does not demonstrate the second or fourth prong.

Plaintiff demonstrates the prima facie case's first and third prongs. Plaintiff engaged in an activity protected under the Elliot Larsen Act by filing a complaint against his supervisor alleging harassment on the basis of Plaintiff's race. (Def.'s Br. at Ex. E (Charge of Discrimination) at 1; see Howard v. Canteen Corp., 192 Mich. App. 427, 430 and 434 (Mich. Ct. App. 1991)(the plaintiff's complaints about harassment provided ample evidence for a retaliation claim), overruled on other grounds by Rafferty v. Markovitz, 461 Mich. 265 (Mich. 1999). Additionally, Defendant's termination of Plaintiff's employment is sufficient to meet the prima facie case's third prong. See above this opinion and order II.B.1.b; see also EEOC v. Univ. of Chi. Hosps., 276 F.3d. 326, 331 (7th Cir. 2002)(finding that termination is a materially adverse employment action). Therefore, Plaintiff shows that he engaged in a protected activity and that Defendant took an adverse employment action with respect to Plaintiff.

However, Plaintiff does not provide evidence that Defendant knew about Plaintiff's filing a compliant with the MDCR/EEOC. Plaintiff makes the unsupported assertion that "[t]he [MDCR/EEOC] contacted Dana, putting them on notice of the Complaint [sic] filed by Alfaro." (Pl.'s Resp. at 12.) Plaintiff provides no evidence that the MDCR/EEOC actually contacted Defendant or that the MDCR/EEOC, even if it did contact Dana, notified Dana of Plaintiff's complaint. This assertion by itself is insufficient to meet the prima facie case's second prong. Furthermore, Defendant provides contradictory evidence that Plaintiff's supervisors were not

aware of Plaintiff's complaint until after Dana had already terminated Plaintiff. (Def.'s Br. at Ex. H (Coley's Dep.) at 26.) Additionally, the only MDCR/EEOC complaint that the parties submit to this Court is dated October 10, 2003, at least fourteen days after Dana fired Plaintiff. (Def.'s Br. at Ex. E (Charge of Discrimination) at 1.) Therefore, Plaintiff does not establish the prima facie case's second prong.

 Plaintiff also fails to show the last element of a prima facie case, the causation between the protected activity and the adverse employment action. Johnson v. U.S. Dept. of Health and Human Services, 30 F.3d at 47. Plaintiff alleges that his filing a complaint of racial discrimination against his employer caused Defendant to terminate Alfao. (Pl.'s Resp. at 13.) However, a Plaintiff must establish the Defendant's notice to establish causation. Mitan v. Neiman Marcus, 240 Mich. App. 679, 682 (Mich. Ct. App. 2000); Hager v. Warren Consol. Sch., No. 22259, 2002 Mich. App. LEXIS *8 (Mich. Ct. App. Jan. 8, 2002)("Self-evidently, the chronology or sequence of events underlying a retaliation claim is important, with notice the key connection between protected activities and retaliation. If the alleged retaliatory act occurred before the employer knew that the employee was opposing an alleged violation, there can be no causal connection between the protected activity and the employer's action [...].") Plaintiff, therefore, does not demonstrate the causal link required to establish a prima facie case's fourth prong.

 Additionally, I hold that even if Plaintiff were able to establish a prima facie case of retaliation Plaintiff is unable to demonstrate that Defendant's termination of Alfaro, based on Alfaro's dangerous behavior and inability to perform his job, is a mere pretext. Plaintiff admits that Defendant had ample reason to terminate Plaintiff based on the baseball bat incident and

13

Plaintiff's work history.  (Hr'g 5/9/05)

Plaintiff fails to present sufficient facts to support the second or fourth prongs of an Elliot-Larsen retaliation prima facie case.  Furthermore, Plaintiff is unable to establish that Defendant's proffered reason for terminating Alfaro is a pretext.  Therefore, I GRANT Defendant's motion with respect to Plaintiff's Elliott-Larsen retaliation claim

## III.  CONCLUSION

I GRANT Defendant's motion for summary judgment with respect to Plaintiff's Elliott Larsen Civil Rights Act claims because Plaintiff is unable to present a prima facie case of either discharge based on discrimination or discharge based on retaliation.

**IT IS SO ORDERED.**


s/John Feikens_____
John Feikens
United States District Judge


Date:   May 9, 2005